UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| CAROLINA CASUALTY INSURANCE COMPANY, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:06-cv-1740-SEB-JMS |
| | ) | |
| ESTATE OF RONALD J. STUDER, NATALIE STUDER, Individually and as Adminstratrix of the Estate of Ronald J. Studer, Deceased, CALEB STUDER, BRENT W. DeWEESE, ANDREA L. HOLSTAD, TADEUSZ STROJNY, H.M.D. TRUCKING, INC., STATE FARM INSURANCE COMPANY, FORWARD AIR, INC., RIGHT EXPRESS, EUGENE RAZULEVICIUS, d/b/a UNITED ROAD TOWING, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| FORWARD AIR, INC., | ) | |
| Counter-Claimant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CAROLINA CASUALTY INSURANCE COMPANY, | ) | |
| Counter-Defendant. | ) | |

**ENTRY GRANTING IN PART AND DENYING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court on the Motion for Summary Judgment [Docket No.

85] filed by Plaintiff/Counter-Defendant, Carolina Casualty Insurance Company

("Carolina Casualty"), on November 5, 2007.  Carolina Casualty originally filed a Complaint, and later an Amended Complaint, for Interpleader and Declaratory Relief with the Court, attempting to interplead the $1 million insurance policy limit and obtain a declaration that its duty to defend its insureds ceased upon the payment of the interpleader funds.  By order dated February 14, 2007, we permitted Carolina Casualty to pay its policy limit into the registry of the court, which occurred on February 16, 1007.  Carolina Casualty now contends that it is entitled to summary judgment, having paid its policy limit into the registry of the Court and thereby discharging both its duty of indemnification and its duty to defend.

Defendant, Forward Air, Inc. ("Forward Air"), rejoins that the mere interpleading of the policy limits by Carolina Casualty does not exhaust its duty to defend its insureds and additional insureds.  Additionally, Forward Air has filed a counterclaim, alleging that Carolina Casualty eschewed its duty to defend Forward Air and has failed to reimburse Forward Air for any of the defense costs it has incurred in this matter.  For the reasons detailed in this entry, we <u>GRANT</u> in part and <u>DENY</u> in part Plaintiff's Motion for Summary Judgment.

**Factual Background**

*Terms of the Insurance Policy*

Carolina Casualty issued a combined single limit, $1 million liability policy to

2

Defendant, H.M.D. Trucking, Inc. ("H.M.D. Trucking"),[1] covering the one-year time

period between October 26, 2003, and October 26, 2004.  Exh. 2 (Truckers/Motor Carrier

Coverage Form Decl.).  The limit of insurance reflected in the declarations for that policy

is $1 million.  Id.  The policy provision addressing the limits of insurance provides that:

> Regardless of the number of covered "autos", "insureds", premiums paid,
> claims made or vehicles involved in the "accident", the most we will pay
> for the total of all damages and "covered pollution cost or expense"
> combined, resulting from any one "accident" is the Limit of Insurance for
> Liability Coverage shown in the Declarations.

Exh. 4, at 5 (Truckers Coverage Form).  The policy also contains an MCS-90

endorsement which provides that Carolina Casualty "shall not be liable for amounts in

excess of $1 million for each accident."  Exh. 3 (Form MCS-90).  Additionally, the policy

provides that Carolina Casualty's "duty to defend or settle ends when the Liability

Coverage Limit of Insurance has been exhausted by payment of judgments or

settlements."  Exh. 4, at 2.


***Accident Invoking Coverage***

On October 16, 2004, a motor vehicle accident occurred on Interstate 465 on the

outskirts of Indianapolis, Indiana, involving a tractor-trailer unit operated by Defendant,

Tadeusz Strojny, while in the employ of H.M.D. Trucking.  Ronald Studer, the driver of

---

[1] Defendants H.M.D. Trucking and Tadeusz Strojny were defaulted on July 5, 2007
[Docket Nos. 68, 69].  Defendants E.R.A. Transportation, Inc., Right Express, and Eugene
Razulevicius were defaulted on August 3, 2007 [Docket Nos. 77, 78, 79].

another motor vehicle involved in the accident, died as result of injuries sustained in that accident. Mr. Studer's wife, Natalie Studer, and son, Caleb Studer, also defendants in the underlying action, brought claims against H.M.D. Trucking and Mr. Strojny for the death of their husband and father. In addition, the Estate of Ronald J. Studer has filed a wrongful death claim against Mr. Strojny, H.M.D. Trucking, and others. Defendants, Brent DeWeese and Andrea Holstad, were drivers of other motor vehicles that were involved in the accident, from which they allegedly sustained personal injuries and property damage.

Defendant, State Farm Insurance Company, paid collision and medical payments to or on behalf of the Estate of Ronald J. Studer, Natalie Studer, and Andrea Holstad. Defendant, Forward Air, owned the trailer that Mr. Strojny was operating at the time of the accident and, according to Forward Air, it has paid for the property damage to the trailer and associated environmental cleanup costs. It is undisputed that the total value of all the various claims involved in the October 16, 2004, accident exceeds the liability limits of Carolina Casualty's policy (i.e., $1 million).

### The Instant Lawsuit

Because this litigation has involved multiple claimants with differing claim values and general uncertainty as to whom and what amounts of the policy limits should be paid, Carolina Casualty filed its Complaint for interpleader and declaratory relief on December 6, 2006, after which it filed its Amended Complaint on June 20, 2007 [Docket No. 61].

On February 12, 2007, Carolina Casualty requested permission from the Court to pay its $1 million policy limit into the registry of the Court for the benefit of the claimants, which, as previously noted, we granted by order dated February 14, 2007 [Docket No. 42].  Two days later, on February 16, 2007, Carolina Casualty deposited those funds with the Court [Docket No. 43].

Four days prior to the requested interpleader, on February 8, 2007, Forward Air filed a counterclaim against Carolina Casualty [Docket No. 39], seeking an order that Carolina Casualty: (1) defend Forward Air in a lawsuit filed in Illinois by the Studer family; and (2) pay Forward Air's property and environmental cleanup costs associated with the October 16, 2004, motor vehicle accident.  Neither party disputes that Forward Air qualifies as an additional insured under the Carolina Casualty policy.[2]  However, Forward Air claims that, although it tendered its defense to H.M.D. Trucking on March 19, 2007, the firm that Carolina Casualty retained to represent Forward Air did not enter an appearance until May 16, 2007.  Jewell Aff. ¶ 9.  Additionally, Forward Air contends that, despite its request for reimbursement of its attorney fees and costs associated with the Illinois lawsuit, it has received no payment from Carolina Casualty.  Id. ¶ 11.  Carolina Casualty rejoins that it has in fact continued to pay for Forward Air's defense in

---

[2] At the time of the October 16, 2004, motor vehicle accident, Forward Air and H.M.D. Trucking had a Broker/Carrier Agreement and a Motor Carrier Trailer Interchange Agreement in place.  Jewell Aff. ¶ 4.  These agreements are deemed "insurance contracts" under H.M.D. Trucking's insurance policy with Carolina Casualty and provide that H.M.D. Trucking agrees to indemnify Forward Air for all liability to third parties arising out of the operation of the trailer owned by Forward Air.  Id. ¶¶ 5-6.

5

the Illinois lawsuit since May 2007.  Hawk Aff. ¶¶ 2-3.

## Legal Analysis

### I.      Standard of Review

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party.  <u>See</u> <u>id.</u> at 255. However, neither the "mere existence of some alleged factual dispute between the parties," <u>id.</u>, 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment.  <u>Michas v. Health Cost Controls of Ill., Inc.</u>, 209 F.3d 687, 692 (7th Cir. 2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  <u>Celotex</u>, 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears

the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case.  Id. at 325.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes.  Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994).  Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate.  See Shields Enterprises, Inc. v. First Chicago Corp., 975 F.2d 1290, 1294 (7th Cir. 1992); Wolf v. City of Fitchburg, 870 F.2d 1327, 1330 (7th Cir. 1989).  But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated.  See Celotex, 477 U.S. at 322; Ziliak v. AstraZeneca LP, 324 F.3d 518, 520 (7th Cir. 2003).   Further, a failure to prove one essential element "necessarily renders all other facts immaterial."  Celotex, 477 U.S. at 323.

A plaintiff's self-serving statements, which are speculative or which lack a foundation of personal knowledge, and which are unsupported by specific concrete facts reflected in the record, cannot preclude summary judgment.  Albiero v. City of Kankakee, 246 F.3d 927, 933 (7th Cir. 2001); Stagman v. Ryan, 176 F.3d 986, 995 (7th Cir. 1999); Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1295 (7th Cir. 1993).

II.     Discussion

7

### A.    Duty to Indemnify

Carolina Casualty contends that, when it acknowledged that its liability would fully consume the $1 million policy limit and paid that amount into the Court's registry, and thus exhausted the liability coverage limit, it thereby discharged its duty to indemnify.  Forward Air does not dispute this contention.  The insurance contract at issue explicitly caps Carolina Casualty's indemnity expenses at $1 million for each accident triggering coverage.  Because Carolina Casualty has deposited the policy limit in the registry of the court for the benefit of the defendants/claimants, and no party has opposed Carolina Casualty's request to be discharged from its duty of indemnification, we GRANT Carolina Casualty's Motion for Summary Judgment on this issue and thereby discharge it of any further duty to indemnify.

### B.    Duty to Defend

While Carolina Casualty's *indemnity* expenses are capped by the $1 million policy limit, there is no contractual limit on the amount of *defense* costs it might be obligated to pay.  As noted above, the insurance policy provides that Carolina Casualty's duty to defend ends only when the applicable policy limits (i.e., $1 million) have been exhausted *in the payment of judgments or settlements*.  Thus, we next address whether Carolina Casualty's deposit of its policy limits to the Court through the interpleader action terminates its contractual duty to defend.

8

### 1.      Choice of Law Analysis

Initially, there is a dispute between the parties regarding whether Indiana law or Illinois law governs this issue, requiring a choice of law analysis.  The parties agree that, because the basis of our jurisdiction here is diversity of citizenship and Indiana is the forum state for the litigation, Indiana's choice of law rules apply.  See S.A. Healy Co. v. Milwaukee Metro. Switch District, 50 F.3d 476, 478 (7th Cir. 1995) ("[A] federal court sitting in diversity must first apply the forum state's choice of law rules, which may or may not select the forum state's substantive law to govern the dispute." (internal citations omitted)).

For choice of law purposes, Indiana treats insurance policy questions, at least those similar to the ones at hand which turn on the interpretation of policy language, as issues of contract, regardless of whether the cause of the underlying dispute rests in tort.  See State Farm Mut. Auto. Ins. Co. v. Estate of Bussell, 939 F. Supp. 646, 650 (S.D. Ind. 1996) (Barker, J.); American Family Mut. Ins. Co. v. Williams, 839 F. Supp. 579, 583 (S.D. Ind. 1993) (McKinney, J.); Travelers Ins. Companies v. Rogers, 579 N.E.2d 1328 (Ind. Ct. App. 1991).  Generally, Indiana's choice of law rule for contract actions requires application of the law of the forum with the most intimate contacts to the facts.  Bedle v. Kowars, 796 N.E.2d 300, 302 (Ind. Ct. App. 2003) (citing Hartford Accident & Indem. Co. v. Dana Corp., 690 N.E.2d 285, 291 (Ind. Ct. App. 1997)).

In other words, "[t]he court considers all acts of the parties touching the transaction in relation to the several states involved and will apply as the law governing

9

the transaction the law of that state with which the facts are in most intimate contact."

American Employers Ins. Co. v. Coachmen Industries, Inc., 838 N.E.2d 1172, 1178 (Ind.

Ct. App. 2005) (citing Hartford, 690 N.E.2d at 291).  In making this determination, the

court considers the following factors: (1) place of contracting; (2) place of negotiation of

the contract; (3) place of performance; (4) location of subject matter of contract; and (5)

domicile, residence, nationality, place of incorporation and place of business of parties.

Bedle, 796 N.E.2d at 302 (citing Hartford, 690 N.E.2d at 291).  However, a court is to

undergo this analysis only if there is some relevant difference between the substantive

laws of the different states.  Hartford, 690 N.E.2d at 291 ("If the purposes and the policies

of two potential rules are the same, the forum should apply the forum law.").

     Here, Carolina Casualty argues that there is no need for the Court to address

choice of law issues because "there is no difference between Indiana and Illinois law with

respect to [Carolina Casualty's] entitlement to be discharged under the policy."  Pl.'s Br.

at 8.  Thus, Carolina Casualty sidesteps the need to designate a particular state's laws as

controlling.  Forward Air counters that there is in fact a significant difference between

Indiana and Illinois law in that, in some cases, Illinois law requires insurers to defend

above and beyond merely interpleading the policy limit, while Indiana law does not.

Def.'s Resp. at 11.  Furthermore, Forward Air contends that, because H.M.D. Trucking is

an Illinois corporation and the insurance policy was delivered to H.M.D. Trucking's

Illinois address, the choice of law factors "tilt heavily in favor of Illinois law applying."

Id. at 7.

In support of its contention that its duty to defend is discharged, Carolina Casualty relies heavily upon the Northern District of Indiana's recent ruling in <u>Carolina Casualty Insurance Company v. Estate of Zinsmaster</u>, 2007 WL 3232461 (N.D. Ind. October 30, 2007), in which the court addressed the identical issue presented in the case at bar, to wit, whether depositing the policy limits into the registry of a court through an interpleader action terminates the contractual duty to defend.  In <u>Zinsmaster</u>, as in our case, the insurance policy at issue provided that the contractual duty to defend ended when the policy limit had been "exhausted by payment of judgments or settlements."  <u>Id.</u> at *2.  At the time the plaintiff filed its motion for summary judgment in <u>Zinsmaster</u>, no settlement agreement had been reached, nor had the policy limit been distributed.  However, after the summary judgment motion was filed, but before the court ruled on the motion, the parties reached a mediation agreement, and the court had ordered distribution of the deposited funds in accordance with that agreement.

After collecting and analyzing the applicable cases from both Indiana and Illinois law, in order to determine whether a significant difference on this issue exists between the two forums, the Court in <u>Zinsmaster</u>, <u>supra</u>, concluded that "there may be a difference in the law of Indiana and Illinois regarding the affect of interpleader on the contractual duty to defend, at least where those funds have not be unconditionally tendered or distributed." <u>Id.</u> at *5.  However, where "the insurance company has exhausted the policy limits with no hope of retrieving the funds, any difference [between Indiana and Illinois law] does not affect the outcome."  <u>Zinsmaster</u>, 2007 WL 3232461, at *5.  In other words, under

such circumstances and under both Indiana and Illinois law, the insurer's duty to defend is discharged.

Our examination of the relevant caselaw in Indiana and Illinois mirrors the Zinsmaster Court's analysis.  As discussed below, because we find that Carolina Casualty's deposit of the $1 million to the registry of the court was a full surrender of the policy limit, rather than a conditional tender, even though the funds have not yet been distributed, any difference between Indiana and Illinois law is not outcome determinative under the facts of this case.  Thus, we conclude our choice of law analysis with no need to go any further.

### 2.    Application of Law to Duty to Defend

As noted, Carolina Casualty has made a full surrender of its policy limits and does not dispute that the total value of all the claims it is obligated to pay exceeds the $1 million amount.  Further, it has deposited the $1 million in the registry of the court with no expectation that it might later recoup any of that money.  Thus, Carolina Casualty has made an unconditional tender of the policy limit and relinquished any claim to those funds.  As such, under either or both Indiana and/or Illinois law, Carolina Casualty is entitled to summary judgment on its interpleader complaint.

Although the duty to defend is separate and distinct from the duty to indemnify, as the Illinois Supreme Court has succinctly explained, it is only *broader* than the duty to indemnify in certain circumstances:

> The duty to indemnify arises only when the insured becomes legally obligated to pay damages in the underlying action that gives rise to a claim under the policy.  The duty to defend an action brought against the insured, on the other hand, is determined solely by reference to the allegations of the complaint.  If the complaint alleges facts which bring the claim within the potential indemnity coverage of the policy, the insurer is obligated to defend the action.  Thus, the insurer must defend an action even though it *may not* ultimately be obligated to indemnify the insured.  Where the insurer has exhausted its indemnity limits, however, the insurer *cannot* ultimately be obligated to indemnify the insured.  Thus, the duty to defend is broader than the duty to indemnify only when the insurer has the potential obligation to indemnify.  *But when, as here, the insurer has no potential obligation to indemnify, it has no duty to defend*.

Zurich Ins. Co. v. Raymark Industries, Inc., 514 N.E.2d 150, 163 (Ill. 1987) (last emphasis added).  Here, as discussed *infra*, Carolina Casualty has no potential obligation to indemnify further because it has conceded that its liability exceeds its policy limits and has unconditionally deposited the $1 million policy limit with the registry of the court.  As such, the facts at hand are distinguishable from Illinois cases, such as American Standard Insurance Co. v. Basbagill, 775 N.E.2d 255 (Ill. App. Ct. 2002), and Douglas v. Allied American Insurance, 727 N.E.2d 376 (Ill. App. Ct. 2000), in which the Appellate Court of Illinois declined to discharge the duty to defend merely because the policy limits had been tendered to the court.[3]

In its briefing, Forward Air relies heavily on Douglas, in which the court held that the insurer was not relieved of its obligation to defend merely by paying the policy limits

---

[3] These cases are also distinguishable in that, here, we have determined that Carolina Casualty is discharged from its duty of indemnification due to the payment of its $1 million policy limit and its corresponding concession that its liability for the claims against it exceeds that amount.  Thus, unlike in Basbagill and Douglas, the policy limits in this action have been exhausted through the judgment of interpleader.

to the court.  On its face, <u>Douglas</u> appears to apply to our case, but a closer examination reveals that the circumstances in <u>Douglas</u> were materially different than the situation in the case at bar.  In <u>Douglas</u>, after being sued by multiple claimants, the insurer hired an attorney to defend, tendered the policy limits into the court for disbursement in the underlying tort litigation, and unilaterally withdrew its defense, leaving the insured unrepresented during trial.  727 N.E.2d at 378.  Thus, in <u>Douglas</u>, the insurer deposited the policy limit without admitting liability and withdrew its defense without knowing whether its policy limits would actually be exhausted.  Here, however, Carolina Casualty filed a separate interpleader action and deposited the policy limits into the registry of the court and conceded that the claims for which it is liable exceed its policy limit; in addition, it has continued to defend its insureds while awaiting this court's judgment.  Thus, <u>Douglas</u> is clearly distinguishable and does not affect our analysis here.

In <u>Basbagill</u>, the Court, addressing a policy provision similar to the one at issue here, held that the "plaintiff has not 'paid' its policy limit merely by remitting the sum to the circuit court by interpleader without surrendering any claim to the funds or delivering them to a party who is legally entitled to them."  775 N.E.2d at 262.  Unlike our case, the plaintiff in <u>Basbagill</u> expressly refused to admit any liability and conceded that it would get some, if not all, of the interpled funds back in the event that it was not found liable or was found liable for less than the full amount.  <u>Id.</u>  Thus, as that court determined, it was "merely an interim agreement to cover whatever liability plaintiff *might* incur in the future."  <u>Id.</u> at 261.  Conversely, although there has not yet been a complete distribution

of the $1 million here, Carolina Casualty has fully surrendered all of its rights to the funds and has conceded that the claims stemming from the motor vehicle accident for which it is liable exceed that amount.

In conclusion, having found that the policy limit has been exhausted so that Carolina Casualty has no potential obligation to indemnify, we hold that it is also discharged from its duty to defend under either Indiana or Illinois law.  The policy at issue capped Carolina Casualty's obligations at $1 million.  Because Carolina Casualty has unconditionally deposited the maximum amount required under the insurance contract with the registry of the court for the benefit of the claimants and acknowledged that its liability would fully consume that amount, it has no further contractual duty to assume the costs of defense, including attorney's fees.  Accordingly, for the reasons detailed above, we GRANT Carolina Casualty's Motion for Summary Judgment on this issue.

### C.   Counterclaim

On February 8, 2007, Forward Air filed its counterclaim against Carolina Casualty [Docket No. 39], requesting that the Court order Carolina Casualty to: (1) defend any action that has been or may be brought against Forward Air stemming from the October 16, 2004, accident; and (2) pay Forward Air its property damage, environmental clean-up costs, cost of defense, and incidental and consequential damages arising from the same accident.

Carolina Casualty contends that partial summary judgment in its favor is warranted

here because it has been paying Forward Air's defense costs since May 2007, and, further, that its duty to defend has been discharged by the payment of its policy limits to the Court by the interpleader. Additionally, it argues that the property damage and environmental clean-up costs for which Forward Air is requesting payment are specifically excluded from liability coverage in the insurance policy, and, even if Carolina Casualty were responsible for them, Forward Air must make its claim against the interpleaded fund, not against Carolina Casualty directly. Forward Air limits its response to arguing that Carolina Casualty had "actual notice" of its duty to defend on October 16, 2004, long before Forward Air got around to tendering its defense in May 2007, so at the very least Forward Air is due reimbursement for that time period. Forward Air has not addressed any of Carolina Casualty's other arguments.

### 1. Duty to Defend

Because Carolina Casualty concedes that there are issues relating to Forward Air's request for reimbursement of defense costs incurred prior to Carolina Casualty assuming its defense in May 2007 that cannot be resolved on the current summary judgment record (Pl.'s Reply at 10-11), we <u>DENY</u> Carolina Casualty's Motion for Summary Judgment on this narrow issue.[4]

---

[4] Any other issues related to Carolina Casualty's duty to defend have been addressed *infra*.

## 2.      Property Damage and Environmental Clean-Up Costs

As noted above, Forward Air also contends in its counterclaim that it suffered

property damage and environmental cleanup costs in the subject accident and requests

that this court order Carolina Casualty to pay those damages.  Carolina Casualty counters

that it has discharged its duty of indemnification under the policy by depositing its policy

limit into the registry of the court, and thus, Forward Air must assert any claim it may

have against the fund, not against Carolina Casualty.  Furthermore, Carolina Casualty

contends that Forward Air does not actually have a claim to pursue against the

interpleaded funds for property damage or covered pollution costs because any such claim

was expressly excluded from liability coverage.

The Carolina Casualty insurance policy specifically excludes liability coverage

for:

> "[p]roperty damage" to or "covered pollution cost or expense" *involving*
> *property owned or transported by the "insured" or in the "insured's" care,*
> *custody, or control.*  But this exclusion does not apply to liability assumed
> under a sidetrack agreement.

Exh. 4, at 4 (emphasis added).  Forward Air admits that it was the owner of the trailer

being pulled by Mr. Strojny when the accident occurred (Ans. ¶ 16 [Docket No. 39]) and

that Forward Air's trailer was being transported by an employee of H.M.D. (the insured)

and was in the insured's care, custody, or control.  Therefore, as Carolina Casualty

contends, any property damage to the trailer or any covered pollution cost or expense

involving the trailer was specifically excluded from liability coverage.  Forward Air has

not responded to this argument.  Accordingly, we GRANT Carolina Casualty's Motion for Summary Judgment on this issue.

**III.     Conclusion**

For the reasons detailed in this entry, we GRANT, in part, Carolina Casualty's Motion for Summary Judgment, discharging it from the duty to indemnify and the duty to defend.  Additionally, we find that any property damage and environmental clean up costs associated with the trailer owned by Forward Air that was involved in the motor vehicle accident are excluded from coverage under the insurance policy and thus GRANT Plaintiff's Motion for Summary Judgment on that issue as well.  However, we DENY Carolina Casualty's Motion for Summary Judgment on the issue of reimbursement for defense costs incurred by Forward Air prior to May 2007.

IT IS SO ORDERED.

Date:  ____May 14, 2008        ____

_Sarah Evans Barker_

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:
Robert F. Ahlgrim Jr.
STATE FARM LITIGATION COUNSEL
bob.ahlgrim.jxus@statefarm.com

Robert D. Brown
SPANGLER JENNINGS & DOUGHERTY
rbrown@sjdlaw.com

David W. Craig
CRAIG KELLEY & FAULTLESS
dcraig@ckflaw.com

Karen Jane Mellencamp Davis
THE PARDIECK LAW FIRM
kmd@pardiecklaw.com

Scott Anthony Faultless
CRAIG KELLEY & FAULTLESS
sfaultless@ckflaw.com

Richard M. Goodman
GOODMAN KALAHAR, P.C.
rgoodman@goodmankalahar.com

Robert Dennis Hawk
SPANGLER JENNINGS & DOUGHERTY P.C.
rhawksr@sjdlaw.com

Timothy F. Kelly
KELLYLAW OFFICES
tfk@kelly-lawyers.com

Michael Brian Langford
SCOPELITIS GARVIN LIGHT & HANSON
mlangford@scopelitis.com

Roger L. Pardieck
THE PARDIECK LAW FIRM
rlp@pardiecklaw.com

Scott Curtis Quick
HARRINGTON LAW, P.C.
scott@harringtonlaw.us